IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF
INDIANA



| | |
|---|---|
| MAEVE LAVERTY, | § |
| Plaintiff, | § |
| v. | § Civil Action No.: 1:25-cv-01488-RLY-TAB |
| CITY OF INDIANAPOLIS, MARION COUNTY, CHIEF OF POLICE IMPD, AND BRIAN COPPINGER., | § |
| Defendants, | § |

## COMPLAINT

Plaintiff, complaining of the Defendants, alleges and says:

### PARTIES

1. Plaintiff Maeve Laverty is a resident of Marion County, IN..

2. Defendant Brian Coppinger is a resident of Marion County, IN.

3. Defendant Chief of Police of Indianapolis Metropolitan Police Department and is a resident of Marion County, IN.

4. Defendant City of Indianapolis is a municipal corporation formed under the laws of Indiana with a principal place of business in Indiana.

5. Defendant Marion County is a political subdivision of the State of Indiana with a principal place of business in Indiana.

### JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action pursuant to 28 USCS §

1331 and 28 USCS § 1343, as this action arises under the Constitution and laws of the United States, specifically.

7. This Court has personal jurisdiction over defendant Brian Coppinger as all actions took place within this jurisdiction.

8. This Court has personal jurisdiction over the defendant Chief of Police of Indianapolis Metropolitan Police Department as all actions took place within this jurisdiction.

9. This Court has personal jurisdiction over the defendant City of Indianapolis as all actions took place within this jurisdiction.

10. This Court has personal jurisdiction over defendant Marion County as all actions took place within this jurisdiction.

11. This Court is the proper venue for this case pursuant to 28 USCS § 1391, as a substantial part of the events or omissions giving rise to the claim occurred in Indianapolis and Marion County, which are located within the Southern District of Indiana.

**STATEMENT OF FACTS**

12. In June of 2018, while plaintiff was out of town with her nine year old child, Daniel Overman and Tyler Lee Vanderpan committed felony theft against the plaintiff's property.

13. Upon her return, plaintiff sought legal justice for the burglary.

14. Mr. Overman was arrested and charged with the theft. Mr. Vanderpan was witnessed entering and exiting the property on multiple occasions with Mr. Overman, while wearing an ankle monitor from a previous crime. Although he sold items to a pawn shop for which Ms. Laverty had ESNs and was blatantly

selling items on Facebook belonging to the plaintiffs; he was not charged or arrested for the theft.

15. After the arrest warrant was served on Mr. Overman, Mr. Vanderpan was in the vehicle belonging to Mr. Overman when it was pulled over during a traffic stop. Both were arrested at that time for drugs. Mr. Overman was also arrested for the theft.

16. Detective Michael Roach acknowledged that he believed Mr. Vanderpan was involved in the crime yet he refused to implicate him. Mr. Vanderpan indeed admitted not only to his attorney but to Prosecutor Daphne Whitmire that he was involved in the theft.

17. Before the deposition, prosecutors Daphne Whitmire and Dirk Cushing instructed Ms. Laverty that she needed to deny any knowledge of Mr. Vanderpan's involvement in the crime. This was to cover up the fact that Mr. Vanderpan was not implicated in the theft.

18. Ms. Laverty had no choice but to comply with the order from Ms. Whitmire and Mr. Cushing. She had been threatened prior to this that her case would be dropped if she did not cooperate. It was only under duress and out of fear that Ms. Laverty complied with being forced to lie. It was something she had objected to many times knowing all too well that Mr. Vanderpan was indeed guilty.

19. During the deposition Ms. Laverty was asked if she knew of Mr. Vanderpan. She answered in the negative, which was a lie. The defense attorney for Mr. Overman was so perplexed by this answer that he again asked the question. Once more Maeve Laverty was forced to commit perjury.

20. Until the point of Ms. Laverty being told to lie during the deposition she had never

committed a crime. She has never been arrested or convicted of any crime in the U.S. nor in Ireland, her country of origin. By incriminating Ms. Laverty in the process of perjury they have denied her the statutory right to apply to become a US citizen.

21. Due to Mr. Vanderpan not being implicated in the theft there was a huge discrepancy as to what could be told in court and the truth. For the trial of Mr. Overman Judge Clark Rogers was lied to by the police and the prosecutors. Judge Clark Rogers asked why this case was brought before him as he was completely unaware of the full extent of the crime. This in turn led to the not guilty verdict of Mr. Overman. A complete miscarriage of justice brought about by the lack of evidence of which there was ample, yet not revealed to Judge Rogers.

22. Immediately following the trial and the not guilty verdict Ms. Laverty attempted to file a complaint against Detective Michael Roach for perjury with the Citizens Police Complaints Office only to be informed by LeAnnette Pierce, Executive Director of CPCO [in an email] that they refused to investigate if Detective Roach lied. The board that is meant to help civilians resolve matters involving police. Instead Ms. Laverty had to figure out some way of simply having her voice heard by the board. It took almost a year, July 2021 before Ms. Laverty was able to stand in front of the board but not for the reason of investigating perjury. Ms. Laverty was told during her ten month wait for CPCO that she was lucky she wasn't shot by police. Still having unresolved issues, set forth years of fighting for answers and seeking the truth only to be continually met with a wall of silence to cover up perjury.

23. In October 2021 Ms. Laverty, after an email exchange, spoke on the phone with

Deputy Mayor Judith Thomas about the above events proving that the Mayor's Office was fully aware of the crimes committed by the defendants.

24. In February 2022 Ms. Laverty took the brave step to write to Judge Rogers to inform him that he had been lied to before, during and after the trial. Judge Rogers performed his legal and moral duty by referring her correspondence to Chief Prosecutor Ryan Mears, making him aware of the matter. Ms. Laverty was never contacted by Mr. Mears nor anyone in his office in relation to the facts and information she had brought forward. The Prosecutor's Office is fully aware of the claims made by the plaintiff.

25. In February 2023, Randal Taylor, Chief of Police of Indianapolis Metropolitan Police Department replied to an email sent by Ms. Laverty in which she begged him to help her child who was suffering from severe mental anguish as a result of years of being ignored by the defendants and the pain they have caused. Chief Taylor asked Ms. Laverty to contact him. When she responded he in turn never contacted her again. Proving that the Chief of Police of Indianapolis Metropolitan Police Department was fully aware of the pain and suffering of her child.

26. At the time of the theft The Chief of Police Bryan Roach and the Indianapolis Metropolitan Police Department (IMPD) covered up the incomplete investigation instead of pursuing charges against Tyler Lee Vanderpan. It has continued to be covered up by each Chief of Police of Indianapolis Metropolitan Police Department thereafter, and is still being covered up to this day.

27. The devastation of the past five years [seven since the burglary] has accumulated in the recent knowledge [June, 2025] of the irreparable loss of the ability for Maeve Laverty to apply for US citizenship. Having committed perjury even under duress

leaves Maeve Laverty ineligible to become a US citizen. This not only forever gravely affects the life of Ms. Laverty but also that of her child for which she is the sole caregiver.

28. It appears that the defendants continue to collude among themselves and others to cover up the crimes they have committed and the crime they forced Ms. Laverty to commit, which ultimately led to the miscarriage of justice in the trial of Mr. Overman.

29. The disparity and imbalance of power between the parties is so vast that the defendant's duty to uphold the law was abused to the point of retaliation and intimidation. Maeve Laverty and her child were mere victims of a crime that have had their lives destroyed and entirely upended by the actions, inactions and abuse of the defendants. Their duty is to help victims not victimize them further.

30. Plaintiff attempted to file a tort claim as a Pro Se litigant on behalf of herself and her child against the defendants.

31. During the appeal process, defendant Brian Coppinger sent a threatening email to plaintiff regarding attorneys' fees if she proceeded with her appeal. The plaintiff truly feared this as retaliation. She was extremely scared and concerned for her well-being and that of her child. She also perceived it to be a plot by the defendants to want to continue to silence her by forcing her to unwillingly drop her lawsuit. The defendants wanted to continue to intentionally conceal the crimes committed. It appears they had no true intention to follow through on their threat by not bringing it before the Appeals Court. However, the plaintiff was not aware of this at the time of receiving the email. It was meant only to strike fear in Ms. Laverty, which they succeeded in accomplishing, the damage was done.

32. This threat caused plaintiff mental harm and prevented her from adequately pursuing her appeal, resulting in severe mental anguish. Interfering greatly in her due process.

33. Interference in the due process and denial of Maeve Laverty's ability to apply for US citizenship is a violation of her statutory rights. Maeve Laverty cannot in truth answer all of the questions on the N-400, Application for Naturalization lawfully due the requirement of being forced to lie under oath. Showing that even after seven years of control and manipulation the defendants continue to dictate the narrative of the life of Maeve Laverty and that of her child. Imposing on her a lifelong affliction and disability.

34. By forcing her to commit perjury the defendants have denied Maeve Laverty the right and freedom to become a US citizen. In filing this lawsuit Maeve Laverty wants to be absolved and exonerated from all culpability pertaining to the act of perjury. That she may apply to become a US citizen with a clear conscience of any association and guilt at being forced to break the law.

35. Maeve Laverty wants the ability and freedom to move forward with her life safe in the knowledge that she will be free from incrimination, retribution and incarceration. Void of persecution as a whistleblower from those deemed trusted members of society.

36. Maeve Laverty refuses to continue to lie to cover up injustice and the defendants criminal activity for which they have never been held accountable or responsible.

37. Forcing Maeve Laverty to break the law goes far beyond the realms of official misconduct. It brutally contradicts what the defendants are meant to stand for and continues to destroy her life and her hope for her future. The defendants have

sacrificed the quality of the lives of their victims for their own advantage and benefit, so as not to expose or incriminate themselves and their actions.

38. Any attempt by the defendants to silence Maeve Laverty will continue to deny her resolution and her ability to heal, therefore affecting her entire future. It spells a life that cannot be altered through her own devices and having exhausted all other attempts, leaving her no option but to seek resolution through the courts

39. Upon the filing and review of this lawsuit should the defendants move forward in denial of their actions and inactions as stated, detailed and laid out they will knowingly and deliberately continue to deny Maeve Laverty her ability and her right to become a US citizen and deprive her of her freedom to live as such.

40. The defendants cannot in good faith, sound mind or clear conscience claim in any way to be oblivious to the knowledge of the pain and suffering they continue to cause. Inflicting further trauma and intentional emotional distress upon the plaintiff, Maeve Laverty.

41. Had Maeve Laverty not been forced to lie under oath she could have legitimately applied to become a US citizen. She is now forever trapped in a life that she had no control creating. Imprisoned in a world far beyond what a civilized society would deem as normal. The narrative of these circumstances caused by the defendants are entirely beyond her control. Committing a crime goes against everything Maeve Laverty believes in. Being forced to commit a crime deprived her of her innocence and her belief in the true meaning of innocence. Maeve Laverty is in pursuance of her right to innocence, justice, resolution and the ability to begin healing.

## CLAIMS FOR RELIEF

Count I - Violation of Civil Rights Under 42 U.S.C. § 1983 - Deprivation of Due Process

(against defendants Chief of Police of Indianapolis Metropolitan Police Department, City of Indianapolis, and Marion County)

42. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 41 as if fully set forth herein.

43. Defendants deprived plaintiff of her constitutional rights secured by the Fourteenth Amendment to the United States Constitution.

44. Defendant Chief of Police of Indianapolis Metropolitan Police Department, acting under color of state law as the Chief of Police, covered up the investigation of the burglary against plaintiff's property instead of properly pursuing charges against the perpetrator.

45. Marion County prosecutors, acting as agents of defendant Marion County, encouraged the plaintiff to lie during the investigation, leading her to commit perjury.

46. These actions deprived plaintiff of her right to due process of law.

47. As a direct and proximate result of defendants' actions, plaintiff has suffered damages, including but not limited to the inability to pursue citizenship and severe mental anguish.

Count II - Violation of Civil Rights Under 42 U.S.C. § 1983 - First Amendment Retaliation

(against defendant Brian Coppinger)

48. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 47

as if fully set forth herein.

49. Plaintiff engaged in constitutionally protected activity by filing a tort claim and lawsuit against defendant Chief of Police of Indianapolis Metropolitan Police Department and defendant City of Indianapolis.

50. Plaintiff's filing of a tort claim and lawsuit constitutes protected speech and petition activity under the First Amendment to the United States Constitution.

51. Defendant Brian Coppinger took adverse action against plaintiff by sending a threatening email regarding attorneys' fees if she proceeded with her appeal.

52. Defendant's adverse action caused plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in the protected activity.

53. The threatening email caused plaintiff mental harm and prevented her from adequately pursuing her appeal.

54. Defendant's adverse action was motivated at least in part by plaintiff's exercise of her constitutionally protected right to petition the government for redress of grievances.

Count III - Municipal Liability Under 42 U.S.C. § 1983 - Policy or Custom (against defendants City of Indianapolis and Marion County)

55. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 54 as if fully set forth herein.

56. Defendants City of Indianapolis and Marion County maintained policies, practices, or customs that caused the deprivation of plaintiff's constitutional rights.

57. The City of Indianapolis, through its police department and Chief of Police of Indianapolis Metropolitan Police Department, maintained a policy or custom of covering up investigations rather than properly pursuing charges.

58. Marion County, through its prosecutors, maintained a policy or custom of encouraging witnesses to provide false testimony to secure favorable outcomes in criminal cases.

59. These policies, practices, or customs demonstrated deliberate indifference to plaintiff's constitutional rights.

60. As a direct and proximate result of these policies, practices, or customs, plaintiff suffered damages, including but not limited to the inability to pursue citizenship and mental anguish.

Count IV - Violation of Civil Rights Under 42 U.S.C. § 1983 - Supervisory Liability (against defendant Chief of Police of Indianapolis Metropolitan Police Department)

61. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 60 as if fully set forth herein.

62. Defendant Chief of Police of Indianapolis Metropolitan Police Department, was responsible for the supervision, training, and discipline of officers within the Indianapolis Metropolitan Police Department.

63. Defendant Chief of Police was personally involved in the constitutional violations against plaintiff by participating in or directing the cover-up of the investigation into the burglary against plaintiff's property.

64. Alternatively, the defendant Chief of Police had knowledge of and acquiesced to

his subordinates' violations of plaintiff's constitutional rights.

65. Defendant Chief of Police failed to adequately train or supervise his subordinates to conduct proper investigations and not to cover up crimes.

66. As a direct and proximate result of defendant Chief of Police's actions and omissions, plaintiff suffered damages, including but not limited to the inability to pursue citizenship and mental anguish.

Count V - Intentional Infliction of Emotional Distress (against defendant Brian Coppinger)

67. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 66 as if fully set forth herein.

68. Defendant Brian Coppinger engaged in extreme and outrageous conduct.

69. Defendant Coppinger sent a threatening email to plaintiff regarding attorneys' fees if she proceeded with her appeal, which was extreme and outrageous conduct that exceeded all bounds of decency.

70. Defendant Coppinger intended to cause plaintiff severe emotional distress or knew that there was a high probability that his conduct would cause such distress.

71. The timing and content of the threatening email demonstrate defendant's intent to intimidate plaintiff and prevent her from exercising her legal rights.

72. Plaintiff suffered severe emotional distress as a result of defendant's conduct.

73. The threatening email caused plaintiff mental harm and prevented her from adequately pursuing her appeal, resulting in severe emotional distress.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff respectfully requests that this Court enter judgment in her favor and against defendants, and grant the following relief:

a. Compensatory damages against all defendants in an amount to be determined at trial for mental anguish, emotional distress, and harm to plaintiff's immigration prospects.

b. Punitive damages against defendants Brian Coppinger and Chief of Police in an amount to be determined at trial.

c. A declaration pursuant to 28 USCS § 2201 that defendants' actions violated plaintiff's constitutional rights under the First and Fourteenth Amendments to the United States Constitution.

d. An injunction requiring defendants City of Indianapolis and Marion County to implement proper training and policies to prevent similar constitutional violations in the future.

e. Reasonable fees and costs pursuant to 42 USCS § 1988.

f. Such other relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

/s/ Maeve Laverty
Maeve Laverty
1018 N. Bosart Avenue
Indianapolis, IN 46201